IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAEL COLLOP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| ONE TECHNOLOGIES, LP | § | |
| | § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT AND REQUEST
## FOR SPEEDY HEARING UNDER F.R.C.P. 57

Plaintiff **LAEL COLLOP** hereby brings claims against Defendant One Technologies, LP for violations of the Family Medical Leave Act ("FMLA") and also seeks a declaration from this Court pursuant to 28 U.S.C. § 2201, and to recover attorney's fees and costs.

### I.

### JURISDICTION AND VENUE

1. Jurisdiction over this action is based upon the Family Medical Leave Act, 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331 (federal question jurisdiction), as well as 28 U.S.C. § 2201.

2. Venue of this action is governed by 29 U.S.C. § 2617(a)(2) and is proper in the Northern District of Texas because Plaintiff was employed by Defendant at its office in Dallas County, Texas, and the incidents giving rise to this lawsuit occurred in Dallas County, Texas.

### II.

### PARTIES

3. Plaintiff Lael Collop ("Collop") is a resident of Dallas County, Texas, who, at all relevant times, was an employee of OT.

4. Defendant One Technologies, LP ("OT") is an employer within the meaning of 29 U.S.C. § 2611(4)(A) and is a Delaware limited partnership authorized to do and doing business in the State of Texas, and may be served by service on its registered agent: Robert K. Cobb, 600 N. Pearl St., Suite S2270, Dallas, Texas 75201.

## III.

## FACTUAL BACKGROUND

5. Collop was originally hired by OT in December 2007 as a contract employee. On January 17, 2008, Collop was hired as a full-time, exempt status, W-2 employee of the Company at an annual salary of $54,000.00. Collop worked as the executive assistant to the Chief Financial Officer, David J. Logsdon ("Logsdon").

6. When hired as a full-time employee, Collop signed an Employment Agreement, which contained a Covenant Not to Compete. The Covenant Not to Compete provided that for a period "ending twelve (12) months after [Collop's] employment with [OT] has been terminated, whether for cause or otherwise, that: [Collop] will not, directly or indirectly, . . . (i) engage in Restricted Business within the Restricted Territory." Restricted Business is defined as "(i) any business conducted by [OT] or its subsidiaries during the term of [Collop's] employment . . . and/or which relate to [Collop's] duties or assignments for [OT], and/or (ii) any business competitive with the business conducted by [OT] or its subsidiaries, during the term of [Collop's] employment . . . and/or which relate to [Collop's] duties or assignments for [OT]." Restricted Territory is defined as "the entire United States and any foreign country in which [OT], its affiliates or subsidiaries conduct any business or in which businesses competitive with the businesses of [OT] are conducted." A true and correct copy of the Employment Agreement is attached hereto as Exhibit "A" and incorporated by reference herein.

7. At the time of hire, Collop informed OT that she had been diagnosed with Multiple Sclerosis ("MS") and that she may need time off for medical reasons, including physician appointments. Collop's work-day was project-driven and, with OT's consent, she generally began her workday between 9:30 and 10:30 a.m. and worked until 7:00 or 8:00 p.m.

8. In July 2008, Collop received a positive performance review and a significant pay increase raising her annual salary to $58,000.00. The following month she received a general performance-related bonus in the amount of $3,000.00. Collop's contributions were recognized in the "All hands Meeting." As of July 2008, Collop's job performance was certainly meeting or exceeding OT's expectations.

9. In October 2008, Collop's position was reclassified to hourly/non-exempt (even though the categorization of "exempt" on her job description was not changed until May 7, 2009). As a result, OT was now required to compensate Collop for any overtime hours worked in excess of forty (40) hours per week.

10. On February 4, 2009, Collop suffered a seizure while at work. As a result of this seizure, her doctor took her out of work due to a serious health condition under FMLA. Collop was on FMLA from February 14, 2009 until May 11, 2009.

11. On the day Collop returned to work after her FMLA leave, Logsdon presented her with a written memorandum setting forth his expectations for PTO/Leave, appropriate tardy/absence procedures, and her scheduled work hours. In this May 11, 2009 written memorandum, Logsdon stated that he required Collop to work a normal forty (40) hour work week, without overtime, and she must be at work by 9:00 a.m.

12. Prior to taking FMLA, Collop was not required to begin her workday at 9:00 a.m. As a result of the new overtime policy, Collop frequently found herself in situations where she

had to decide whether to complete the requested work or wait so she would not accrue any overtime hours. When Collop asked OT's human resources department what she was to do in those situations, she was instructed not to accrue any overtime.

13. Additionally, upon Collop's return to work after her FMLA leave, Collop's workspace was moved across the office away from Logsdon's office for whom she was the executive assistant.

14. On May 20, 2009, Logsdon gave Collop a written warning for tardiness and falsely accused Collop of never arriving to work by 9:00 a.m. since she had returned from her FMLA leave. In fact, Collop was usually at the office by 9:00 a.m., but it was her practice to do rounds of the building and check in with the security guards since that was one of her areas of responsibility. Nevertheless, after receiving the May 20th warning, Collop made it a point to be at her desk by the 9:00 a.m. start time. Collop's timesheets show that she arrived prior to 9:00 a.m. every morning from May 20, 2009 until her termination and did not work any overtime.

15. On June 8, 2009, OT terminated Collop's employment, but refused to give a reason for the termination.

## IV.

## COUNT ONE

### *FMLA Discrimination and Retaliation*

16. Collop incorporates by reference all of the allegations set forth in paragraphs 1 through 15 above as if fully set forth at this point herein.

17. Collop alleges that she was discriminated and retaliated against by OT because she engaged in FMLA-protected activity. More specifically, upon Collop's return to work after her FMLA leave, OT discriminated and retaliated against her by changing her working

conditions and by terminating her because she used family medical leave which she was legally entitled to do. OT discriminated and retaliated against Collop by changing her work schedule by requiring her to begin her workday at 9:00 a.m., which had not been previously required, moving her workspace across the office away from Logsdon's office for whom she was the executive assistant, and writing her up and falsely accusing her of never arriving to work by 9:00 a.m. since she had returned from her FMLA leave.

18. Based on the foregoing, OT violated the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. As a result, Collop has suffered damages. Collop demands back pay and reinstatement, compensatory damages, and statutorily required liquidated damages. In the alternative to reinstatement, should reinstatement not be possible, Collop seeks front pay.

## V.

## COUNT TWO

### *Declaratory Judgment*

19. Collop incorporates by reference all of the allegations set forth in paragraphs 1 through 18 above as if fully set forth at this point herein.

20. Collop seeks a declaration from this Court under 28 U.S.C. § 2201. Collop is a person who is interested under a written contract, namely the Employment Agreement with OT, whose rights, status, and legal relations are affected by such contract. The provisions restricting Collop from working as an executive assistant for a period of one year with any business that may, even remotely, compete with OT within the United States and any other country in which OT engages in business is an unreasonable restraint on employment. For these reasons, Collop seeks a judicial determination and declaration that the Covenant Not to Compete within the Employment Agreement is unenforceable under Section 15.50(a) of the Texas Business &

Commerce Code. As set forth above, Collop was employed by OT as an executive assistant. The Covenant Not to Compete impairs Collop's job search and it is unreasonable in that it is not limited in geographical area and scope and imposes a greater restraint than necessary to protect OT's goodwill or other business interest.

21. Pursuant to Rule 57 of the Federal Rules of Civil Procedure, Collop requests that the Court order a speedy hearing of Collop's declaratory judgment action.

## VI.

## JURY DEMAND

22. Collop requests a jury trial.

## VII.

## ATTORNEY'S FEES

23. Collop has been required to engage legal services to prosecute this action. Accordingly, she seeks recovery of reasonable attorneys' fees, reasonable expert witness fees, and other costs pursuant to 29 U.S.C. § 2617(a)(2), as well as section 37.009 of the Texas Civil Practice & Remedies Code.

## VIII.

## PRAYER

WHEREFORE, Plaintiff prays the Court order a speedy hearing of Plaintiff's declaratory judgment action and that upon trial, she recover from Defendant her actual damages and additional liquidated damages as permitted by the Family Medical Leave Act, a declaration that the Covenant Not to Compete is unenforceable under Section 15.50(a) of the Texas Business & Commerce Code, plus attorneys' fees, costs, expert witness fees, and expenses, plus prejudgment and postjudgment interest, and all other relief in law or equity that she is justly entitled.

Respectfully Submitted,

**BLANSCET SUTHERLAND**
**HOOPER & HALE, L.L.P.**

*/s/ Barbara T. Hale*

BARBARA T. HALE
State Bar No. 24012762
**NELLIE G. HOOPER**
State Bar No. 00798211
14285 Midway Road, Suite 400
Addison, Texas 75001
Tel:   (214) 764-7973
Fax:   (214) 764-7981

**ATTORNEYS FOR PLAINTIFF**